No. 12,932.

STATE OF LOUISIANA EX REL. NICK RAMSAY VS. JUDGE THIRD DISTRICT OF LOUISIANA.

50 1125
106 201

Application for *mandamus* to compel signing of bill of exceptions.

A rule of court requiring bills to be signed the next day after the taking of same is a proper and reasonable one, but its strict observance should not have been insisted on under the circumstances of this case.

It is no ground for declining to sign a bill that opposing counsel disputes the statement of facts embodied in the same, it being within the power of the judge and his province to himself embody a true and *controlling* statement of the facts in the bill in his reasons for making the ruling excepted to.

State ex rel. Ramsay vs. Judge.

ON APPLICATION for a Writ of *Mandamus*.

*J. W. Holbert* and *John A. Richardson* for Relator.

Respondent Judge *pro se.*

Submitted October 31, 1898.
Opinion handed down November 21, 1898.

The opinion of the court was delivered by

BLANCHARD, J.   The writ is sought to compel the respondent Judge to sign a bill of exceptions.

The relator was recently on trial in the Parish of Claiborne under an indictment for murder, was convicted of manslaughter, and from a sentence at hard labor has taken an appeal to this court.

The bill of exceptions was taken to a ruling of the judge in the course of the trial, and the averment is that it is necessary to his defence in this court and to the completion of the record sent here.

One J. M. H. Taylor being called as a juror was sworn on his *voir dire*, and examined touching his fitness to serve in the case.   The questions propounded and the answers thereto were taken down in short-hand.   At the conclusion of the examination and cross-examination, the State announced its acceptance of the juror, whereupon the accused challenged him for cause.   This challenge being overruled, an exception on part of the accused was noted and a bill reserved.   This occurred late in the evening of the day of trial, October 10th.   On the morning of October 12th, at motion hour of the court, the accused through counsel presented his bill of exception for the signature of the Judge.   To this the Judge replied that the rules of court required bills of exception to be presented the morning after the taking of same, and, accordingly, the bill in question had not been seasonably presented, it being one day late. To this counsel for accused replied that it was through no fault or laches of the accused or his counsel the bill had not been presented earlier, that the stenographer had been so busy with other court matters it had been impossible for him to transcribe the examination of the juror Taylor on his *voir dire* from the stenographer's notes, that this was necessary as the examination was an essential

part of the bill annexed thereto, and that the bill had been pre-
pared and presented at the first opportunity after the transcribed
notes had come into possession of counsel for accused.

The Judge, thereupon, announced he would consider the question
of its signature, and took possession of the bill with others reserved
in the case.

These are the averments under oath of the relator, who goes on
further to say that he remained thereafter under the impression the
Judge had, later, signed the bill in question, along with the other
bills in the case, and that he and his counsel did not ascertain otherwise
until the transcript of the case for appeal was being made out, when
the bill, being missed, was searched for and found unsigned in the
back of the Judge's docket. He states this was after the court had
adjourned for the term.

To the rule to show cause why the *mandamus* should not issue the
Judge replies that the facts of the case are not correctly given by
the relator, and proceeds to give his version of the occurrence.

In substance he says that Taylor was called as a juror late in the
*afternoon* (five o'clock) of the 10th of October, not " late in the
evening," and that shortly afterward court adjourned for the day;
that when the bill was presented on the morning of the 12th, counsel
for the State objected to its being signed as presented because the
statement of facts in the bill embodied only the questions propounded
to Taylor by counsel for the accused and his answers thereto, and did
not contain the questions and his answers thereto, propounded on
part of the State; that the bill, with this objection, was handed to
him (the Judge) and on examining the bill he called the attention of
accused's counsel to the fact that the bill was presented too late
under the rules of court; that counsel replied the bill had been pre-
pared as soon as the short-hand notes had been transcribed and he
had been furnished with a copy thereof to be annexed to the bill;
that he (the Judge) had heard nothing of the stenographer being too
busy with other court matters to render it impossible to seasonably
transcribe the notes; that he knew the fact to be otherwise and the
notes could have been copied in time for the bill to have been pre-
sented on October 11th; and that on Octobor 15th, before adjourning
the sitting of the court, he announced his ruling on the objection
to the bill sustaining same, and he supposed relator's counsel had
heard him as he was present. He annexes a copy of the rule of his

court relating to the time for presenting bills of exception for signature, stating, in that connection, that frequently attorneys, for reasons assigned, obtained extensions of time, and that he (the Judge) sometimes signed bills presented after time if there was no disagreement between counsel as to the facts, and if the facts were stated as he recollected them, but that he had always declined to sign bills when there was a dispute as to facts.

We think the bill should have been signed. All the doubts should have been resolved in favor of the accused in this as in other respects. When the bill was presented on the morning of the 12th the objection· of counsel for the State was leveled at the bill *as drawn*, not at *the time* of its presentation. If the bill, to make it fair and perfect, should have embodied, or had attached to it, a fuller reproduction of the examination of the juror Taylor on the *voir dire*, it was within the power of the judge to require it to be done, or he could have embodied same in his reasons, written in the bill, for making the ruling he did as to the competency of the juror, and thus have obviated the objection of the State. Nor does it appear that the statement of counsel for the accused, made when the bill was presented, that he had not been able seasonably to procure a copy of the examination, was controverted at the time. If it had been, he might have verified the same by a statement then and there from the stenographer, and the opportunity should, at least, have been given him so to do, by the then raising of the issue of fact.

To afterward deny the bill on the ground that he might have procured Taylor's statement sooner, when his averment in this respect was unchallenged at the time he made it, was a ruling erroneous under the circumstances. And to deny the bill because it was not full enough in its recitals of Taylor's examination, when it was in the power of the judge to order the whole examination on the *voir dire* into the bill, was also erroneous.

If the transcription of the notes could not have been had sooner, it furnished good ground for not holding the accused or his counsel to the strict observance of the rule of court, and the judge's reply to the relator's application for the writ shows that while the rule existed, and is no doubt a proper one, its enforcement had not always been insisted on. Besides, it was clearly within his discretion, in a proper case, to depart from it, and we think the facts here make out a case where he could reasonably have done so.

For the reasons assigned it is ordered that the *mandamus* applied for be made peremptory, and that respondent judge sign the bill of exceptions annexed to relator's petition, with full reservation of the right on his part to add to it the whole of the examination of the juror Taylor on his *voir dire*, and such statement of facts and reasons as he may chose to give for his ruling holding the juror to be competent.

It is further ordered that when thus executed the bill of exceptions be filed in the record of the case of the State vs. Nick Ramsey, No.    , on the docket of the District Court in and for the parish of Claiborne, and be copied as part of the transcript of appeal in that case, the filing to be of date October 15, 1898, *nunc pro tunc.*

And that costs herein incurred be borne by respondent.

The CHIEF JUSTICE and MR. JUSTICE BREAUX dissent.

### DISSENTING OPINION.

NICHOLLS, C. J.  The relator seeks to obtain from this court, under its supervisory jurisdiction, a writ of *mandamus* to compel the District Judge in and for the parish of Claiborne to sign a bill of exception accompanying his petition, and to which is annexed certain questions propounded to and answered by one J. M. H. Taylor, who was tendered as a juryman in the case of the State vs. Nick Ramsey, recently decided, in which case relator was the defendant, and in which he stood charged with murder.  Relator's claim is that Taylor, being called as a juryman, was sworn on his *voir dire*.  That relator's counsel cross-examined him, and caused the shorthand reporter to take down the questions asked and answers made by him under cross-examination.  That after this was done, the State accepted Taylor as a juryman and defendant challenged him for cause.  That the court overruled the challenge for cause, to which ruling defendant excepted—this occurring late in the evening of October 10.  That on the morning of October 12, at motion hour, defendant, through counsel, presented his bill of exception for signature, but the court, after looking over the bill, stated that the rules of his court required that bills of exception should be presented the next morning after taking the same at motion hour, and that this bill was not so presented, it being the second morning.  That defendant's counsel stated that it was no fault of defendant or his counsel that the shorthand reporter was so busy with other court matters that

it had been impossible for him to write out the evidence from his notes, and that the bill had been prepared and presented at the first opportunity after the evidence was given them to be annexed to the bill. That the judge stated he would consider whether or not he would sign it, and he took possession of the same with others. That relator thought the judge had signed the bill and had signed it with the others, and that he and his counsel did not detect, or find out otherwise, and that it had not been filed as a part of the record until the transcript was being made up for appeal, when on examination it was found on the back of the judge's docket unsigned; that this was after the court had adjourned for the term; that by these facts is shown a refusal of the judge to sign the bill. Relator avers that it was the duty of the judge to have signed the bill, or given his reasons for refusing to do so; that it is his right to have the same signed and receive the benefit thereof; that the court can make no rule which would deprive an accused person of a fair and impartial trial, when non-compliance with same is not to be attributed to any fault or laches of defendant or his counsel. In answer to a rule served upon the judge to show cause why the *mandamus* asked for should not be issued, the District Judge states that the relator does not give the facts of the case correctly, and gives them as follows:

Taylor was called on the afternoon of Monday, October 10, about 5 o'clock, and not "late in the evening," as stated by relator, and shortly after court adjourned until next morning. When the bill was presented at motion hour, on October 12, Mr. E. H. McClendon, an attorney for the State, objected to its being signed as presented, because the statement of facts in the bill contained only the questions propounded by defendant's counsel to Taylor and answers thereto, and did not contain any statement of Taylor's answers to questions propounded by the attorneys for the State. The bill of exceptions and this objection were handed to me at the same time, and on looking at the bill I called the attention of defendant's counsel to the fact that the bill was presented too late—a rule of court requiring that bills of exception be presented the morning after being reserved. To this counsel stated that the bill had been prepared and presented as soon as the shorthand reporter had furnished the typewritten copy of Taylor's examination to attach to the bill. That he (the judge) heard nothing of the shorthand reporter's being so busy with other court matters it had been

impossible for him to write the evidence from his notes; that it was to his, the judge's, personal knowledge that the shorthand reporter could have furnished. the typewritten copy by 8 o'clock P. M. Octo-- ber 10, and in ample time for counsel to have prepared his bill for presentation at morning hour, October 11. That on the 15th of October, before adjourning the sitting of the court, he announced from the bench that he had not signed and ordered this bill to be filed; that relator's counsel was present, and he (the judge) supposed he. heard what was said, and he knew of no reason why relator or his counsel should suppose the bill had been signed and filed. That the rule of court on the subject was as follows:

" Bills of exception to the ruling of the court must be presented at or before motion hour on the day after they are reserved, except those reserved on the last day of the term, and those must be pre- sented on said last day."

The judge states that this rule was adopted in 1888; had been· printed with other rules of the court, which had been furnished to· members of the bar, who had never before complained of the same. That it was adopted so that bills should be presented while matters were fresh in the minds of all parties, though attorneys had fre- quently, for reasons assigned, obtained an extension of time. That he had sometimes signed bills presented to him after time if there was no disagreement between counsel as to the facts, and if the facts were stated as he recollected them, but that he had always declined to sign bills where there was a dispute as to facts.

That relator's counsel had full knowledge of this rule; had ample time to prepare and present their brief in accordance with the rule, or for cause shown, might have had time extended, and in not doing so were guilty of laches and a total disregard of the rule of court.

That relator had not been deprived of any right whatever by any act of the judge; that, on the contrary, his counsel's not presenting: the bill in time, and not stating all the facts in said bill, was the rea- son why the bill of exceptions was not signed and made a part of the record. That he declined to sign the bill for the reasons set forth. That it was necessary that he should compel an observance of the rules of his court. That he had a right to adopt rules, not contrary to law, and he knew of no law which this particular rule violated. He referred the court to Art. C. P. 145; Green vs. Dakin & Dakin, 15 La. 152; 'State *ex rel.* Gervais Leche vs. Waggner, 42 An. 54. Just.

before closing his answer the judge declared: "Should the court make the *mandamus* peremptory I hereto annex my reasons for overruling the challenge of the juror, Taylor, for cause, and in that event ask that it be considered just as though filed in the bill of exceptions attached to relator's petition. I do this so that if the rule in contest be declared void, and it can not be enforced, the trial of the case of State vs. Ramsey may not be delayed."

The reasons so assigned were as follows: "In his answers to questions propounded by counsel for the State Mr. Taylor very emphatically declared that he had no interest either for or against the defendant; that he had no feeling in the case whatever; that he was not related to the defendant or the deceased, and that while he had a fixed opinion he stated emphatically that he could lay that opinion aside and try the case fairly and impartially on the law and the evidence adduced on the trial. The court has known J. H. M. Taylor for twenty years, knows that for the last two or three years he has been engaged in a business which carried him away from the town of Homer a large proportion of his time and had that confidence in him as a man which satisfied the court that he could try the case fairly and impartially.

"The challenge was made by counsel for defendant for cause without stating what the basis of the cause was and I ruled on it solely on the question of the juror's ability to lay that opinion aside and try the case impartially on the law and the evidence adduced on the trial."

The unsigned bill of exceptions annexed to relator's petition recites that in trying the case the name of J. H. M. Taylor was drawn from the box in selecting the jury and he was called. That on his *voir dire* he made the answers to the questions propounded to him which were annexed to and made part of the bill. That he was accepted by the State, and on being submitted to the defendant he was challenged "for cause." That the court overruled the cause and forced the defendant to exercise one of his peremptory challenges. To which ruling the defendant excepted and tendered his bill of exception after submitting same to the counsel of the State, praying that it be signed and made part of the record.

To this bill were annexed questions propounded to and answered by Taylor as follows:

"J. H. M. Taylor sworn:

State ex rel. Ramsay vs. Judge.

"Q. You live in the town where the homicide occurred?

"A. Yes, sir.

"Q. You were here on the night of the homicide?

"A. Yes, sir.

"Q. You came down to where the homicide occurred that night?

"A. Yes, sir.

"Q. You were present at the coroner's inquest?

"A. No, sir.

"Q. You were present at the commitment trial?

"A. I heard Mr. Kelley's evidence and I read his statement in the paper.

"Q. You heard a good deal of talk around town on the night of the homicide?

"A. Yes, sir.

"Q. You assisted in laying out the deceased and burying him?

"A. Yes, sir.

"Q. This trial has been had three or four times now, which trial was it that you heard Mr. Kelley's evidence.

"A. Well, I think it was the last trial.

"Q. You knew Mr. Kelly to be a witness to the transaction.

"A. Yes, I heard him say so.

"Q. Have you any bias or prejudice for or against the accused.

"A. No, sir, I have none.

"Q. You say you heard Mr. Kelly's evidence, did you hear the testimony of any other witness?

"A. Yes, sir; I heard I think a part of Mr. Ledbetter's; maybe I just walked in the court room two or three times while the trial was going on. I heard part of the argument of the two trials.

"Q. From all this you have formed an opinion?

"A. Yes, sir.

"Q. At this time is that a fixed opinion?

"A. Well, of course it is a fixed opinion now. Yes, sir.

"Q. If you are sworn as a juror, Kelley's evidence being the same, your opinion would remain the same?

"A. Well, of course, if the evidence was the same that opinion would be unchanged.

"Q. Well, Mr. Kelley's evidence would have to be different from what you have heard on the former trial to change your opinion?

"A. Yes, sir, and some others.

" Q. Are you satisfied that you can disregard the opinion you have now and the evidence you have formerly heard, and try this man fairly and impartially on the evidence here?

"A. I think so.

" Q. The question is, do you know that you can do it?

"A. Yes, sir. '

" Q. The evidence of Kelly being the same?

"A. Yes, sir."

The only question before us upon this application is whether the District Judge improperly refused to sign the bill of exceptions reserved and tendered by defendant's counsel. In justification of his course the judge calls our attention to a rule of his court which he informs us was not complied with, requiring that all bills of exceptions reserved during a trial should be tendered during motion hours of the day. Relator claims that it was impossible for him to have complied with the rule, inasmuch as the court's stenographer was unable, by reason of other business, to make out from his notes the answers made by the juror to the questions propounded to him. The judge denies the correctness of that statement. Be the fact as it may, the judge informs us that the rule in question is not an absolutely fixed and arbitrary rule enforced by him on all occasions, independently of all attendant circumstances, but simply a general rule adopted in the interest of exact and prompt administration of justice, requiring the tendering of the bill in the time stated, but subject to be relaxed on application for extension of time. The judge states that no extension was asked for and no explanation made to him, as should have been done. He furthermore states that when the bill was in fact presented to him objection was made on the part of the prosecution to its being signed, on the ground that the stenographer's notes covered only the questions propounded and answers made on cross-examination of the juror on his *voir dire*, and not those on the main or original examination by the State.

The rule of the District Court referred to, as explained by the judge as to its enforcement, is not an unreasonable one. I think relator's counsel should have asked for an extension of time if there were facts calling for the same. If the judge refused, counsel could then have made issues of fact and brought them up under bill of exception. I do not think it was essentially necessary for relator to have awaited the

writing out of the stenographer's notes to have prepared and tendered a bill. He could have made out a detailed statement of facts by way of recitals in the bill, declaring that the same would be verified by stenographer's notes, to be thereto attached, and he could have attached the notes afterward (identified and verified with the bill). The bill as drawn up and forwarded with relator's petition contains no recitals as to what the questions asked and the answers thereto were, but leaves that to be shown by stenographer's notes to be attached. These notes when attached were objected to, on the ground that they were partial, covering only the questions and answers upon the cross-examination. It is quite possible that they covered what was in reality the important part of the examination, but that is mere conjecture on our part. I think the whole of the examination of the juror on the *voir dire* should have been taken down and preserved, and not a fragment. The judge had the right, but was not under the legal obligation to modify the bill. I can not say that the judge failed to perform his duty in declining to sign the bill under the circumstances disclosed. It would, however, have been better for him to have in writing, at the foot of the bill, refused to sign the same and given his reasons therefor.

For these reasons, I think relator's application for a *mandamus* should be refused.

BREAUX, J. concurred in the dissent.