359 So.2d 163 (1978)
STATE of Louisiana
v.
Donald LOVETT.
No. 61277.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied June 15, 1978.
*165 James A. McPherson, McPherson, Weber & Zainey, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Patrick G. Quinlan, Asst. Attys. Gen., Michael S. Fawer, Special Counsel to the Atty. Gen., New Orleans, for plaintiff-appellee.
MARCUS, Justice.
Donald Lovett was indicted in two separate counts for the crimes of aggravated criminal damage to property in violation of La.R.S. 14:55 and conspiracy to commit aggravated criminal damage to property in violation of La.R.S. 14:26.[1] After trial by jury, he was found guilty as charged on both counts. On his conviction for conspiracy to commit aggravated criminal damage to property, defendant was sentenced to serve seven and one-half years at hard labor, and, on his conviction for aggravated criminal damage to property, to serve fifteen years at hard labor, which sentences were to run consecutively with each other and with any other sentence imposed on defendant by a federal court in Louisiana. Defendant was given credit toward service of his sentences for time spent in actual custody prior to imposition of sentences.
*166 On appeal, defendant relies on thirteen assignments of error for reversal of his convictions and sentences.[2]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in permitting the state, over defense objection, to amend the indictment so as to charge him in two separate counts with the crimes of conspiracy to commit aggravated criminal damage to property and the completed offense of aggravated criminal damage to property. He argues that the indictment as amended was invalid.
The record reflects that defendant was originally charged by the grand jury in the same indictment with four separate counts of conspiracy to commit aggravated damage to property. Defendant was also charged in another grand jury indictment with three separate counts of the completed offense of aggravated criminal damage to property. Approximately five months prior to the commencement of trial, the state moved to amend the four-count conspiracy indictment by adding thereto the three counts of aggravated criminal damage to property charged in the second indictment. Defendant's objection to the amendment was overruled. Reading of the amended indictment was waived, and a plea of not guilty was entered. Time was set for defendant to file any special pleadings. Defendant then moved to quash the amended seven-count indictment alleging, inter alia, that the first four counts of conspiracy were multiplicious in that the first three counts were nothing more than an itemization of the property covered by the general allegation in the fourth count. At the hearing on the motion to quash held about four months prior to trial, the state again moved to amend the indictment by reducing the seven counts to two counts. The trial judge allowed the amendment. The amended two-count indictment charged defendant in count one with conspiracy to commit aggravated criminal damage to property and in count two with the completed offense of aggravated criminal damage to property. The minutes reflect that defense counsel objected to the amended indictment only for the purpose of reserving his right to file respective pleadings thereto. Defendant was rearraigned on the amendment indictment. No motion to quash the amended indictment was subsequently filed.
It is well settled that a prosecutor may make substantive amendments to a grand jury indictment. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Gilmore, 332 So.2d 789 (La.1976); State v. Bluain, 315 So.2d 749 (La.1975); State v. Fitzgerald, 248 La. 487, 179 So.2d 906 (1965). An amendment to an indictment which relates to a defect of substance is properly allowed before trial begins. La.Code Crim.P. art. 487; State v. Bluain, supra; State v. Hubbard, 279 So.2d 177 (La.1973). A jury trial commences when the first prospective juror is called for examination. La.Code Crim.P. art. 761.
In the instant case, the original indictment by the grand jury charging defendant with four counts of conspiracy was amended by the state prior to trial to add thereto the three counts of the completed offense previously charged in the second grand jury indictment. The amendment was one of substance which the state was empowered to make prior to the commencement of trial. Thereafter, to cure an alleged deficiency in the seven-count indictment in that the first four conspiracy counts charged therein were multiplicious, the state again amended the indictment to charge defendant in one count with conspiracy to commit aggravated criminal damage to property and in a second count with the completed offense. Because this substantive amendment was made by the state prior to trial, it was correctly allowed by the trial judge. Hence, since the amendment to the indictment was valid, the trial judge properly overruled defendant's objection to the amended indictment.
Assignment of Error No. 1 is without merit.

*167 ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in sustaining the state's objection to a defense question on the ground that it called for an opinion and/or conclusion on the part of the witness.
Robert D. Kerley, a state witness, testified that a few days prior to the commission of the instant offenses at the Jupiter Chemical Company plant site, he had observed defendant drive slowly past the plant site at approximately five miles per hour, turn his vehicle around, proceed past the site again, stop and then drive away. During cross-examination, the witness denied that he had heard defendant deliver any threats at that time but continued that ". . . when a guy drives by your job going about five miles an hour, he is sure casing the place out." Defense counsel then asked the witness:
Q. Was he driving slow enough so that he could look at that and observe and see what was going on and determine how much activity, how many people were working?
The trial judge sustained the state's objection to the form of the question as calling for an opinion on the part of the witness. Thereafter, defense questioning was resumed whereupon the witness denied that he knew why defendant had driven slowly past the plant site.
This court has consistently held that, with rare exception, a witness can testify only as to facts within his knowledge. He may not testify as to any impression or opinion that he may have. La.R.S. 15:463; State v. George, 346 So.2d 694 (La. 1977); State v. Batiste, 318 So.2d 27 (La. 1975); State v. Kirklin, 283 So.2d 713 (La. 1973); State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972). The thrust of the question propounded by defense counsel in the instant case was to call for a speculative opinion on the part of the witness as to the reason for defendant's driving slowly past the plant site. The speculative testimony which would have been elicited in response to the disputed question would, therefore, have been incompetent. La.R.S. 15:463; State v. George, supra; State v. Batiste, supra; State v. Kirklin, supra. Hence, the trial judge properly sustained the state's objection to defendant's question. In any event, the witness subsequently testified that he did not know the reason why defendant had driven slowly past the plant site. Defendant, therefore, was not prejudiced by the ruling of the trial judge.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in refusing his request for production of a prior statement made by state witness John Jensen, Jr., for purposes of impeachment.
At trial, John Jensen, Jr., testified on behalf of the state that defendant had instructed him to kill Shorty Landry, a member of a multicraft labor organization. Thereafter, on cross-examination by defense counsel, the witness admitted that he had made a prior statement to members of the Calcasieu Parish Sheriff's Office while he was in parish prison. Defense counsel requested production of this prior statement. The request was denied by the trial judge on the ground that a proper foundation had not been laid. The witness was then questioned as to whether his prior statement differed from his testimony at trial to which the witness responded that some of it did. Again, defense counsel urged his request for production of the statement which was likewise denied. Thereafter, the witness was asked by defense counsel whether in his prior statement he had related that defendant had told him to kill Shorty Landry. Jensen responded that he had not included that fact in his prior statement since he did not think of it when he gave the statement to the police. At this time, the request for production of the witness' prior statement was reurged by defense counsel but was again denied by the trial judge.
At the time of the trial, a defendant is not entitled to production of a pretrial statement of a state witness unless the *168 proper foundation has been laid for impeachment. This is accomplished when the witness denies making the statement or a showing is made that one or more of the material statements therein are contrary to the sworn testimony. La.R.S. 15:493; State v. Adams, 302 So.2d 599 (La.1974); State v. Curry, 262 La. 616, 264 So.2d 583 (1972); State v. Nails, 255 La. 1070, 234 So.2d 184 (1970). In the instant case, although the witness admitted that he had given a prior statement to the police while he was in custody, he testified that he had not included in the statement the fact that defendant had instructed him to shoot Shorty Landry. Therefore, there was no genuine conflict on this matter between the witness' testimony and any facts related in his prior statement. Moreover, the witness admitted that his prior statement differed in some respects from his testimony at trial. Hence, a proper foundation was not laid for use of his prior statement for impeachment purposes at trial. La.R.S. 15:493. Defendant was not entitled to production of the witness' prior statement. The ruling of the trial judge was correct.
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends the trial judge erred in permitting defense witness Hollis Midkiff to testify on cross-examination regarding statements made to him by Butch Clark who did not appear at trial. He argues that this testimony constituted inadmissible hearsay evidence.
Hollis Midkiff, a business manager for a local union, testified on behalf of defendant. He stated that on the morning of January 14, 1976, he had attended a meeting
of the Southwest Louisiana Building and Trades Council at which defendant advocated the use of peaceful picketing at the Jupiter Chemical Company plant site. The proposal was approved by the council. On cross-examination by the state, Midkiff stated that, on the afternoon of that same day, Butch Clark, an assistant business agent, arrived at his office. Without objection, the witness testified that Clark had told him that earlier that afternoon he had walked in on a meeting attended by defendant and a few business agents and that he had overheard defendant say, "[W]e will get the guard first." After further cross-examination concerning what Clark had related to him, the witness was subsequently asked which individuals Clark had told him were present at this meeting. For the first time, defendant objected to the prosecutor's question on the ground of hearsay. The objection was overruled by the trial judge.
It is well settled that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. La.Code Crim.P. art. 841; State v. Williams, 343 So.2d 1026 (La.1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Phanor, 325 So.2d 579 (La.1976). In the instant case, defendant's hearsay objection to the state's questioning of the witness regarding what was related to him by Clark came too late since it was not urged until after the prosecutor had extensively cross-examined the witness on this subject. Hence, defendant may not avail himself of the alleged error on appeal. La. Code Crim.P. art. 841; State v. Brown, 354 So.2d 516 (La.1978); State v. Wientjes, 341 So.2d 390 (La.1976); State v. Hillman, 298 So.2d 746 (La.1974); State v. Kelly, 262 La. 143, 262 So.2d 501 (1972).
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 11
During closing argument to the jury, the prosecutor argued that the state had proven that defendant conspired with other individuals, both identified and unknown, to commit aggravated criminal damage to property by fomenting labor violence at the Jupiter Chemical Company plant site. In furtherance of this conspiracy, local union members, at the direction of defendant and other business agents of various local unions, perpetrated violence at the plant site. He continued that, although a number of business agents had testified at trial on behalf of defendant that members of their locals were not present at the *169 plant site at the time of the violence, other business agents whose men were there did not testify at trial. The prosecutor then posed the following rhetorical question to the jury:
Where were the business agents whose men did show up and did do the maiming and the killing?
Immediately, defense counsel objected to the prosecutor's remark arguing that it constituted a comment on defendant's failure to produce evidence which was improper since the state is the only party with a burden of proof to meet. The trial judge overruled the objection but admonished the jury that the arguments of counsel were merely their appreciation of the evidence presented at trial and that the jury was to decide the case solely on the evidence adduced at trial and not on the basis of the state's or defendant's closing argument. Defendant assigns as error the ruling of the trial judge.
We do not construe the prosecutor's remark as a comment on defendant's failure to produce witnesses at trial. Rather, the remark was directed to the lack of evidence presented by defendant to refute the state's evidence which established that the violence at the plant site had been perpetrated by local union members in furtherance of defendant's conspiracy to commit aggravated criminal damage to property. Pursuant to La.Code Crim.P. art. 774, the closing argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. Since the prosecutor's remark was directed to the lack of refuting evidence presented by defendant, it was clearly within the scope of the above provision. In any event, the trial judge's admonition to the jury cured any possible prejudice resulting from the remark.
Assignment of Error No. 11 is without merit.

ASSIGNMENT OF ERROR NO. 12
Defendant contends the trial judge erred in refusing to give a requested special charge to the jury which provided:
An alibi is evidence of the fact that the defendant was not present at the time when or at the place where he is alleged to have committed the offense charged in the Bill of Information.
The testimony and evidence in support of an alibi should be considered in connection with all the other evidence in this case; and if, after consideration of all the evidence in the case you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, the defendant should be acquitted.
It is well established that a trial judge is required to give a requested special charge only when the charge is wholly correct and pertinent. La.Code Crim.P. art. 807; State v. Progue, 350 So.2d 1181 (La.1977); State v. George, 346 So.2d 694 (La.1977); State v. James, 339 So.2d 741 (La.1976). In the instant case, defendant's requested special charge was not a correct statement of the law. Pursuant to La.R.S. 14:24, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are guilty as principals. State v. Willis, 322 So.2d 169 (La.1975); State v. Broussard, 312 So.2d 325 (La.1975). In his general charge, the trial judge properly instructed the jury to this effect. Moreover, defendant was charged with conspiracy to commit aggravated criminal damage to property, as well as with the completed offense, which conspiracy was committed when he and one or more individuals combined for the specific purpose of committing the completed offense and one or more of the parties did an act in furtherance of the object of the agreement or combination. Hence, defendant could be found guilty of the crime of conspiracy without his being present when the completed offense, which was the object of the conspiracy, was committed. Since defendant's requested special charge was *170 not wholly correct, the trial judge properly refused to give it.
Assignment of Error No. 12 has no merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in denying his motion for a new trial grounded on the claim that he had discovered after trial, notwithstanding the exercise of reasonable diligence, new and material evidence consisting of pretrial statements of Butch Clark and affidavits of five members of the Millwrights' Local Union which documents contradicted the trial testimony of Hollis Midkiff elicited on cross-examination by the state. He first argues that, if this evidence had been available to him at trial, it would probably have changed the verdict of guilty. He also argues that this evidence, which the state had in its possession prior to trial, constituted evidence favorable to the defense which the state was obligated to disclose.
At trial, Hollis Midkiff, the business manager of the Millwrights' Local Union, testified on behalf of the defense. On cross-examination, he testified that Butch Clark, an assistant business agent for a local union, had related to him that he (Clark) had walked in on a meeting attended by defendant and other business agents and had heard defendant say, "[W]e will get the guard first." Midkiff further testified that defendant's statement had concerned him and he, therefore, had instructed some members of the millwrights' union to leave the Jupiter Chemical Company plant site if labor violence erupted.
At the hearing on the motion for a new trial, defense counsel asserted that he had discovered after trial that Butch Clark had given a statement on August 3, 1976 to members of the district attorney's and attorney general's offices which was favorable to the defense in that it contradicted Midkiff's testimony on cross-examination. He further claimed that this statement had been in the state's possession prior to trial but had not been disclosed to the defense. The state admitted possession of this statement as well as a memorandum of an interview with Clark, both of which it had possessed prior to trial and had not disclosed to the defense. Defense counsel argued that he was entitled to production of these documents and the prosecutor's failure to disclose them to the defense prior to or during trial required the granting of a new trial. In these documents, Clark stated that he had attended a meeting on January 14, 1976, at which defendant and five or six other business agents of various local unions were present and had heard defendant say that, "[W]ell, if he [the guard] gives our people trouble, well we will just turn the shack over with him in it, but he ain't going to fool with out (sic) people, because our people are out there peaceful." Clark further stated that defendant's statement had made him "real nervous" and he subsequently related it to Midkiff who told him that he must have misunderstood what defendant had said.
Additionally, defense counsel asserted in support of his motion for a new trial that he had discovered since trial other new and material evidence consisting of affidavits of five members of the Millwrights' Local Union in which they stated that they had reported to work at the Jupiter Chemical Company plant site at Midkiff's direction on the day that the labor violence occurred.[3] Defense counsel argued that this evidence further contradicted Midkiff's testimony on cross-examination, thereby indicating that Midkiff had perjured himself, and warranted the granting of a new trial. At the conclusion of the new trial hearing, the trial judge denied defendant's motion.
*171 La.Code Crim.P. art. 851 dictates that the court, on motion of the defendant, shall grant a new trial whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; . . .
This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its reliability, and his ruling will be disturbed on appeal only where there is a clear showing of abuse of discretion. In considering a motion for new trial based on newly discovered evidence, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Provost, 352 So.2d 661 (La.1977); State v. Williams, 343 So.2d 1026 (La.1977); State v. Brown, 338 So.2d 686 (La.1976).
First, we find no merit to defendant's contention that the pretrial statements given by Clark constituted evidence favorable to the defense which the state improperly had failed to disclose. It is well settled that the prosecution may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or punishment. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Cass, 356 So.2d 936 (La. 1977); State v. Williams, 349 So.2d 286 (La. 1977); State v. Robinson, 342 So.2d 183 (La.1977). However, the record in the instant case does not demonstrate that the statements given by Clark were in any way favorable to the defense. In fact, the record clearly reveals the contrary since in the pretrial interviews Clark had attributed to defendant a statement to the effect that, if the guard interfered with the activities of the union members on the plant site, they would "turn the shack over with him in it." Hence, the state was not required to disclose Clark's statements to the defense. Moreover, this evidence did not contradict Midkiff's testimony elicited at trial on cross-examination and, therefore, was not so material that it would have produced a different result than the verdict reached.
Nor do we consider the affidavits of the members of the Millwrights' Local Union to be evidence so material that it would have produced a different result than the verdict reached. This evidence, which indicated that members of the Millwrights' Local Union had gone to work at the plant site at Midkiff's direction on the day the labor violence erupted at the plant site, in no way contradicted Midkiff's testimony on cross-examination wherein he stated that he had instructed some of the millwrights to leave the plant site if violence erupted. Nowhere in his testimony did the witness state that he had ordered members of the labor union not to go to work at the plant site on the day the labor violence occurred. Furthermore, this evidence could not have been introduced by defendant at trial to contradict the testimony of Midkiff, a defense witness, since a party may not impeach his own witness, except under certain circumstances, and even then the impeachment is limited to evidence of prior contradictory statements. La.R.S. 15:487. Nor was the state required to disclose this evidence to defendant prior to or during trial since it was not evidence favorable to the defense.
In sum, we conclude that the trial judge did not abuse his discretion in denying defendant's motion for a new trial. Assignment of Error No. 13 is without merit.

DECREE
For the reasons assigned, the convictions and sentences are affirmed.
CALOGERO, J., dissents and assigns reasons.
*172 CALOGERO, Justice, dissenting.
I respectfully dissent because I would find merit in defendant Lovett's sixth assignment of error. Under our jurisprudence in State v. Weston, 232 La. 766, 95 So.2d 305 (1957) and State v. Nails, 255 La. 1070, 234 So.2d 184 (1970), defendant Lovett was due production of the prior statement to police made by state witness John Jensen, Jr. The attempt to change the Weston-Nails rule which was made in State v. Babin, 319 So.2d 367 (La.1975) came in a majority opinion which at best bore the assent of only two justices of the Court and at worst had no value at all because the judgment was reversed on rehearing on other grounds. Under Weston and Nails, once a defendant has established an inconsistency between a witness' testimony and his prior statement, production of the prior statement must be ordered. I disagree with the majority conclusion in this case that there is no inconsistency between this witness' statement to police and his trial testimony simply because the prior statement made no mention of the fact the witness pressed home at trial, namely, that he had been instructed by defendant to kill Shorty Landry. I believe that under Weston and Nails the defendant had established an inconsistency sufficient to require production of the prior statement.
NOTES
[1] The crime charged herein is alleged to have occured on or about January 15, 1976. La. R.S. 14:26 was amended by La. Acts 1977, No. 538, § 1, eff. Sept. 9, 1977. Hence, the new statute is not applicable to the instant prosecution.
[2] In brief to this court, defendant has expressly abandoned Assignments of Error Nos. 2, 4, 5, 7, 9 and 10. Hence, they are no longer before this court for review.
[3] The affidavits of the five members of the Millwrights' Local Union (D-3, D-4, D-5, D-6 and D-7) which were received in evidence at the hearing on the motion for a new trial do not appear in the record. Despite requests of all parties concerned, the affidavits received in evidence could not be located. We have stated the content of these affidavits as gleaned from the arguments of counsel at the new trial hearing and their briefs to this court. (Photocopies of two of the five affidavits were attached to the state's supplemental brief.) There seems to be no real dispute as to their content.